## In re BEATTIE.
### Bankr. No. 10195.

United States District Court
W. D. Michigan, S. D.
Dec. 13, 1951.

George A. Parmenter, Muskegon, Mich., for trustee.

Harold H. Smedley, Muskegon, Mich., for Westinghouse Electric Supply Co.

R. Burr Cochran and Samuel A. Jackson, Muskegon, Mich., for B. F. Goodrich Co.

STARR, District Judge.

On September 17, 1951, the Westinghouse Electric Supply Company filed petition for review of an order of the referee in bankruptcy entered September 7, 1951. The order appealed from denied the petition of the Westinghouse Company filed May 22, 1951, for leave to amend an alleged informal proof of its claim against the bankrupt by the filing of a formal proof, after the expiration of the six-months' period allowed for filing claims.

On his voluntary petition Clarence R. Beattie was adjudged a bankrupt January 14, 1949, and George H. Cross was appointed and qualified as trustee of the bankrupt's estate. The schedules listed the Westinghouse Company as an unsecured judgment creditor in the amount of $1-579.41. On February 2, 1949, attorney Harold H. Smedley of Muskegon, Michigan, who represented the Westinghouse Company, wrote the referee as follows: "Re: Clarence R. Beattie, bankrupt. Will you please advise the date of the first meeting of creditors in the above bankrupt matter?" At a hearing before the referee Smedley testified that with this letter he enclosed a proof of the claim of the Westinghouse Company. However, it appears that this proof of claim was never received by the referee. The next day, February 3d, the referee sent the usual form of notice to all creditors, including the Westinghouse Company and attorney Smedley, informing them that the first meeting of the bankrupt's creditors would be held February 16th. This notice was never received by the Westinghouse Company, but Smedley testified that he received notice of such first meeting. However, it appears that Smedley was not present and that the Westinghouse Company was not represented at the creditors' meeting on the 16th.

On April 14, 1949, the attorney for the trustee wrote Smedley as follows:

"I understand that you are local attorney for Westinghouse Electric Supply Company. I represent George H. Cross, trustee of the above bankrupt (Clarence R. Beattie).

"The trustee is informed that on December 15, 1948, the bankrupt made a bulk sale of merchandise to Westinghouse without complying with the Bulk Sales Law. The amount involved was $242.30. The adjudication took place January 14, 1949.

"Will your client voluntarily pay the trustee $242.30? Are we misinformed about the transaction?"

On April 15th Smedley replied: "In reference to your letter of April 14, concerning the Westinghouse Electric Supply Company, I represented them in obtaining a judgment against Beattie on January 3, 1949, after having been endeavoring to collect $1,579.41 from them since October 22, 1948. I know of no bulk sales by Beattie to Westinghouse during that period of time. As far as I know and as far as my records disclose you have been misinformed."

On May 5th Smedley again wrote the attorney for the trustee: "In furtherance of your letter of April 14th concerning an alleged bulk sale to Westinghouse, there you have been misinformed. There was no such transaction. At one time, Beattie offered to return some merchandise for credit but it was refused. I have verified this with the Detroit attorneys for the Westinghouse Company."

On September 23, 1949, Smedley wrote the trustee: "I think a further examination should be made as to where all the money went in this bankruptcy. Here is a signed statement Beattie made on January 5, 1948, in which he lists current assets at $53,150, with no liabilities. It was on this statement that the Westinghouse Electric Company sold the merchandise to this man. Will the trustee in bankruptcy do something about it?"

In reply to this last letter, the trustee wrote Smedley on September 24th as follows:

"I am in receipt of your letter of Sept. 23, enclosing statement furnished by the bankrupt to Westinghouse Electric Supply Co. under date of 1-5-48.

"A somewhat similar statement was furnished by the bankrupt to the B. F. Goodrich Company, and the matter was gone into quite fully before the referee in a hearing on the petition of the B. F. Goodrich Co. to reclaim certain merchandise alleged to have been sold in reliance upon such statement. The checks and bank deposit book of the bankrupt disclose that he did actually have on hand approximately $9,000 in cash or in the bank. The real estate which is valued in the statement at $22,500 was his home on Peck Street, the title to which stood in the joint names of himself and wife.

"If you think a further investigation should be made, I would suggest that you file a petition under the provisions of Sect. 21-a of the Bankruptcy Law.

"I am returning the statement which you enclosed."

On July 20, 1950, Smedley wrote the referee in bankruptcy concerning the Beattie bankruptcy proceeding: "What is the present situation in the above named bankruptcy matter which occurred about a year ago? We filed a claim and never heard anything of it since. Was it closed? Was there any dividend?"

The statutory period for filing claims in the Beattie bankruptcy proceeding expired August 16, 1949. Section 57, sub. n of the Bankruptcy Act as amended, 11 U.S.C. § 93, sub. n, provides: "Except as otherwise provided in this Act, all claims provable under this Act, * * * shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed".

On May 22, 1951, nearly two years after the expiration of the six-months' period allowed for filing claims, the Westinghouse Company filed the following petition for leave to amend its alleged proof of claim by the filing of formal proof of claim:

"The petitioner Westinghouse Electric Supply Company, a Michigan corporation, by its attorney Harold H. Smedley, respectfully represents:

"1. That the Westinghouse Electric Supply Company is a judgment creditor of the above named bankrupt on a judgment rendered January 3, 1949 in the circuit court of the county of Muskegon in the amount of $1,579.41, with costs of $24.70.

"2. That a proof of claim of the above named creditor was on February 2, 1949 mailed to the above named referee in bankruptcy for the amount of $1,503.20, which

was the amount remaining unpaid on said judgment.

"3. That said proof of claim was never filed in the bankruptcy court and hence said claim has not been allowed, although the claim does appear on the schedules filed with the bankruptcy court by the bankrupt.

"4. That your petitioner has at various times discussed this claim with the trustee and his attorney and that they have both acknowledged the validity and existence of this claim against the bankrupt estate.

"5. That the time for the filing of any new claims has expired the last date of filing being August 16, 1949, and that the claim of your petitioner as a new claim cannot now be duly filed.

"6. That your petitioner prays that an order be entered granting this petitioner the right to amend its claim so that its claim can be properly filed and allowed."

This petition by Westinghouse to amend its claim appears to be based on the theory that even though it had not filed and proved its claim within the six-months' period, the correspondence between its attorney and the trustee and his attorney and the referee constituted an informal proof of claim and a sufficient ground for granting leave to amend after the period for filing had expired.

In pursuance of its petition to amend, the Westinghouse Company about July 5, 1951, tendered to the referee a formal proof of its claim against the bankrupt. Objections to the petition to amend and to the proposed formal claim were filed by the B. F. Goodrich Company, a creditor of the bankrupt. It appears that prior to the filing of the Westinghouse petition to amend, the trustee in bankruptcy had instituted suit in the circuit court of Muskegon county against the Goodrich Company to set aside certain transfers of property by the bankrupt, on the ground that the transfers were in violation of the so-called bulk sales law. As the amount of the trustee's recovery in this suit against Goodrich would be limited to a total of the liabilities of the bankrupt, Goodrich as defendant in that suit had a vital interest in the Westinghouse claim, because if it were allowed, the contingent liability of Goodrich to the trustee would be increased by the amount of the claim.

In support of its petition to amend, the Westinghouse Company alleged that a formal proof of its claim was mailed by its attorney to the referee on February 2, 1949. However, it appears from the record that this proof of claim was never received by the referee. The referee found that no formal claim was filed by the Westinghouse Company within the statutory six-months' period and that no informal proof of claim had been established upon which an amendment might be predicated. In its petition for review the Westinghouse Company contends that the referee erred in finding that it had not filed proof of its claim on February 2, 1949, and also erred in finding that it had not made such informal proof of claim as would entitle it to amend by filing formal proof after the expiration of the six-months' period.

There appears to be some dispute as to whether, at the hearing before the referee, attorney Smedley testified that he mailed proof of the Westinghouse claim to the referee on February 2, or November 2, 1949. However, this would seem to be immaterial, and in this opinion the court will assume that he mailed proof of claim to the referee on February 2, 1949, but that such proof was not received by the referee.

 Assuming that proof of its claim was mailed to the referee within the statutory period for filing claims, that fact cannot aid the petitioner. The law is well established that the proof of claim must be *filed* within the statutory period and that merely placing a proof of claim in the mail properly addressed to the referee does not satisfy the filing requirement of section 57, sub. n of the Bankruptcy Act. In the case of In re R. B. Rose Co., Inc., D.C., 43 F.2d 446, 447, the court said: "Section 57, sub. n * * * provides that 'claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication * * *.' There is no statute authorizing the mailing the proof of claim or providing that mailing is sufficient. The creditor who selects the mail as a vehicle for filing his proof of claim assumes the risk of loss or miscarriage. This is a well-known rule, and

the fact that the lost paper is a proof of claim for filing with a referee in bankruptcy creates no exception." See also In re Harris Bros., D.C., 5 F.Supp. 191.

Westinghouse contends that even if formal proof of its claim was not filed within the statutory period for filing claims, nevertheless the correspondence hereinbefore quoted, and the action of its attorney within such period, constituted an informal proof of its claim and a sufficient basis for granting it leave to amend and file a formal proof of claim after the expiration of the statutory period. The rule that certain acts of a creditor in the course of a bankruptcy proceeding and during the statutory period for filing proof of claim, may give rise to something equivalent to a proof of claim and afford a sufficient basis for allowing an amendment after the statutory period for filing, was recognized and applied in many cases decided before the 1938 amendment of the Bankruptcy Act. See In re Atlantic Gulf & Pacific S. S. Corporation, D.C., 26 F.2d 751; In re Fant, D.C., 21 F.2d 182; Globe Indemnity Co. of Newark, N. J., v. Keeble, 4 Cir., 20 F.2d 84; In re Coleman & Titus Corporation, D.C., 286 F. 303; In re Roeber, 2 Cir., 127 F. 122.

In the Atlantic Gulf & Pacific S. S. Corporation Case, the court said [26 F.2d 751]: "It is well settled that, if there is upon record in the bankruptcy proceedings, within the year specified, anything which is sufficient to show the existence, nature, and amount of the claim, it may be amended after the expiration of the period into a formal claim."

Examination of those cases decided prior to the 1938 amendment of the Bankruptcy Act shows that where amendment of claims was allowed, under the theory that certain acts of the creditor were tantamount to the filing of a proof of claim, the creditor had in some manner during the period allowed for filing claims, spread evidence of his claim upon the record in the bankruptcy proceeding. In the present case the correspondence between the petitioner's attorney, the trustee and his attorney, and the referee within the period for filing claims did not constitute an informal or defective proof of claim which could

later be amended. In other words, there was nothing of record in the bankruptcy proceeding during the six-months' period for filing claims which could be used as the basis for an amendment after the expiration of the period.

It is doubtful whether, even prior to the 1938 amendment of the Bankruptcy Act, the petitioner's showing in the present case would have been held to be a sufficient basis for an amendment of its claim after the expiration of the statutory period for filing. In any event, the 1938 amendment makes discussion of the point unnecessary, because it is clear that under the present law the petitioner has no basis for an amendment. In the case of In re Strikalite, Limited, Inc., D.C., 54 F.Supp. 419, 420, Judge Clancy, dealing with this problem, said:

"Prior to the amendment of the Act in 1938, courts strained to sustain creditors' rights to a dividend by permitting amendment of claims that had the flimsiest forms after the statutory period for filing had elapsed. * * *

"The referee has found, and we agree with him on that ground also, that the statute as amended requires a more formal claim than did the law that was involved in all the reported cases. Section 57, sub. a, 11 U.S.C.A. § 93, sub. a, before the 1938 amendment, read: '(a) Proof of claims shall consist,' etc. The amended act reads: '(a) A proof of claim shall consist,' etc. It is plain that the old act defined 'proof' and the new one defines a thing. That thing is called a proof of claim and is a sworn writing signed by the creditor. This is the 'proofs of claim' required to be filed by § 57, sub. c, which, before the amendment, referred to 'claims after being proved.' The direction contained in § 57, sub. n, and which is entirely new, that all claims 'shall be proved and filed in the manner provided in this section,' taken together with this change in § 57, sub. a, we think contains a clear requirement by statute of what was never required before; namely a filing by the claimant of a written proof of claim signed by him. The 'shall' in 57, sub. n, must be thought to be mandatory as it certainly is elsewhere in this section of

the statute when it is used. As the referee points out, the only provision in the section for filing is in § 57, sub. c, which permits the claimant to file his proof in the bankruptcy court or before the referee after reference. The salvation offered by earlier decisions to a creditor at fault is denied him by this statute obviously for the purpose of speeding up the proceeding to an expeditious conclusion."

In summary I conclude (1) that the Westinghouse Company did not file proof of its claim within the statutory period of six months allowed for filing claims against the bankrupt's estate; and (2) that there was not upon the record in the bankruptcy proceeding, within the statutory period, such evidence or informal proof of its claim as would justify the amendment thereof by the filing of a formal proof after the expiration of the period.

For the reasons stated, the petition filed by Westinghouse on May 22, 1951, for leave to amend its alleged claim against the bankrupt's estate is denied, and the referee's order of September 7, 1951, is affirmed.