UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-8067

_____


IN THE MATTER OF:  MIDLAND INDUSTRIAL SERVICE CORPORATION,

Debtor.


MIDLAND CENTRAL APPRAISAL DISTRICT,
Representing the City of Midland,
Midland Independent School District,
Midland County Hospital District
and Midland College,

Appellant,

versus

MIDLAND INDUSTRIAL SERVICE
CORPORATION, ET AL.,

Appellees.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

(September 30, 1994)


Before GARWOOD and BARKSDALE, Circuit Judges, and SHAW,[*] District Judge.

GARWOOD, Circuit Judge:

     Midland Central Appraisal District (MCAD) appeals the lower

courts' decisions denying its post-petition administrative expense

_____

[*]     Chief Judge of the Western District of Louisiana, sitting by
designation.

claim for ad valorem taxes against Midland Industrial Service Corporation (Appellee).[1]  We affirm.

## Facts and Proceedings Below

On January 14, 1988, Appellee, a Texas corporation, filed for Chapter 11 bankruptcy.[2]  Prior to its bankruptcy petition, Appellee owned personal property within the taxing jurisdiction of MCAD.[3]  On December 1, 1988, MCAD filed an administrative expense claim against Appellee's bankruptcy estate for 1988 ad valorem taxes on personal property of Appellee (the Taxes).  Appellee objected to MCAD's claim, and the bankruptcy court held a hearing on the matter.  On October 25, 1991, the bankruptcy court ruled that the Taxes were pre-petition expenses and denied MCAD's claim. On January 19, 1993, the district court issued an order affirming the bankruptcy court's decision.  MCAD now appeals.

## Discussion

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are subject to *de novo* review.  *In re Consolidated Bancshares, Inc.*, 785 F.2d

---

[1]    On appeal, Appellee alleged that MCAD's appeal was moot because no remedy or relief could be fashioned by this Court.  As the parties, pursuant to a March 31, 1992, settlement agreement, agreed to have the trustee put the amount in controversy in an escrow account pending the outcome of MCAD's appeal, we find no merit to this argument. *See In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1181 (5th Cir. 1986) ("A case is not moot so long as any claim for relief remains viable . . . .").

[2]    The proceedings were subsequently converted to a Chapter 7 petition because of Appellees' inability to pay worker's compensation.

[3]    MCAD represents the taxing entities of the City of Midland, the Midland Independent School District, the Midland County Hospital District, and the Midland College District.

1249, 1252 (5th Cir. 1986).

I.  Administrative Expenses

Section 503 of the Bankruptcy Code provides:

"After notice and a hearing, there shall be allowed, administrative expenses, . . . includingSQ

* * *

(B) any taxSQ

(i) *incurred by the estate*, except a tax of a kind specified in section 507(a)(7)[4] of this title . . . ."  11 U.S.C. § 503(b)(1)(B)(i) (emphasis added).

A bankruptcy estate comes into existence upon the filing of a bankruptcy petition.  *See, e.g.*, *In re Anderson*, 132 B.R. 657, 659 (Bankr. M.D. Fla. 1991).  In accordance with section 503(b), a claim cannot be both a pre-petition secured claim against the debtor and a post-petition administrative claim against the bankruptcy estate.  Therefore, the sole issue is whether the Taxes were "incurred" before or after Appellee's January 14, 1988, bankruptcy petition.

II.  Tax Liability Under Texas Law

The question of when a tax obligation arises is determined by state law.  *In re Columbia Gas System, Inc.*, 146 B.R. 114, 116 (Bankr. D. Del. 1992).  Under section 32.07 of the Texas Tax Code, "property taxes are the personal obligation of the person who owns

---

4    Section 507(a) deals with the priority of expenses and claims.  The applicable part of section 507(a)(7) is clause (B), which applies to property taxes "assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."  11 U.S.C. § 507(a)(7)(B).  Since the Taxes were not assessed before the commencement of the case, section 507(a)(7) is not applicable.

3

or acquires the property on January 1 of the year for which the tax is imposed. [Such] person is not relieved of the obligation because he no longer owns the property." TEX. TAX CODE ANN. § 32.07. Texas law also provides that "[o]n January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property." TEX. TAX CODE ANN. § 32.01 (a). Under Texas law, taxes for a particular year generally are not assessed against the taxpayer until approximately October 1 of that year.[5] *See, e.g.*, *Shaw v. Phillips Crane & Rigging, Inc.*, 636 S.W.2d 186, 188 (Tex. 1982) (noting tax rolls are required to be filed no later than October 1).

III. Parties' Arguments

MCAD argues that a tax is *incurred* on the date it is *assessed*. MCAD asserts that taxes are not incurred until the tax rate is set and the taxes are payable. As a result, MCAD contends that liability for the Taxes was incurred post-petition since the date of assessment occurred after January 14, 1988, the date the

---

[5] In accordance with Texas law, on or before July 25 of any given year, MCAD compiles lists reflecting the ownership and value on January 1 of that year of the property which on January 1 of that year was within MCAD and subject to taxes for that year. TEX. TAX CODE ANN. § 23.01 *et seq*. By July 25 of any given year, MCAD certifies the appraisal rolls to the taxing jurisdictions. TEX. TAX CODE ANN. § 26.01. Around September 1 of any given year, MCAD calculates the tax rate necessary to obtain funding for the budgets of its constituent jurisdictions. TEX. TAX CODE ANN. § 26.05(a). The tax rate is usually finalized and then assessed to the applicable properties by October 1. TEX. TAX CODE ANN. § 31.01(a).

petition was filed.[6]

Counter to MCAD's position, Appellee asserts that a tax is *incurred* on the date tax liability *accrues or attaches*. Appellee contends that in accordance with Texas law, January 1, 1988, was the date when the obligation for the Taxes was incurred, as this was the date MCAD's personal liability for the tax accrued and a lien for the tax attached to the property.

IV. Resolution of the Conflict

The term "incur" is defined as "[t]o have liabilities cast upon one by act or operation of law [or to] become liable or subject to." BLACK'S LAW DICTIONARY 691 (5th. ed. 1979). "[A] tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable." *In re Northeastern Ohio General Hosp. Assn*, 126 B.R. 513, 515 (Bankr. N.D. Ohio 1991).[7] A tax obligation accrues when the event that triggers liability has

_____

[6]     MCAD asserts that this Court in *In re Stanford*, 826 F.2d 353 (5th Cir. 1987), implicitly ruled for its position. In *Stanford*, this Court, in a footnote, stated that the debtors "assert[ed] or conced[ed] that taxes falling due during the administration of the estate . . . are payable as expenses of the estate under 11 U.S.C. § 503(b)(1)(B)(i)." *Id*. at 354 n.1. The footnote simply observed that the parties did not argue the issue; it does not, however, reflect this Court's position.

[7]     In *Northeastern,* the debtor, an employer, was required by state law to pay a tax to fund the cost of providing unemployment benefits to its former employees. Employees of the debtor had been terminated prior to the bankruptcy petition, but benefits were not paid them until after the petition, and the amount debtor was to pay to fund those benefits likewise was not determined or payable until after the petition was filed. At issue was whether the obligation to fund those unemployment benefits paid to the former employees was a pre-petition or post-petition claim against the debtor. The court ruled that because the event that under local law triggered the liability, *i.e.* the termination of the employees, occurred pre-petition, the claim was not a post-petition administrative expense. *Id*. at 515.

occurred.[8]

Under Texas law, a property owner's liability for ad valorem taxes for any given year arises as of January 1 of that year regardless of when the tax is assessed. TEXAS TAX CODE ANN. § 32.01. Therefore, under state law, even if the amount of MCAD's claim was undetermined, its right to payment from Appellee accrued on January 1, 1988. Appellee's liability for the Taxes was "incurred" on January 1, 1988, and therefore is a pre-petition expense.

The Taxes are not administrative expenses of the estate because the events which triggered the tax liability, ownership of the property and attachment of the tax lien, occurred pre-petition. MCAD is not entitled to assert both a pre-petition secured tax lien and a post-petition administrative expense for the same tax.[9]

For the foregoing reasons, the district court's order denying MCAD's claim for the Taxes as an administrative expense is

AFFIRMED.

---

[8]    *See, e.g., Columbia Gas System*, 146 B.R. at 118 (ruling that under local law debtor obligation to pay taxes arose not when it was assessed but "when it owned and operated property within the prior calendar year"); *Northeastern Ohio*, 126 B.R. at 515 (holding unemployment taxes accrued when employees were terminated, not when the amount of compensation taxes are determinable); *In re Brent Explorations, Inc.*, 91 B.R. 104, 107 (Bankr. D. Colo 1988) (stating that liability for oil production taxes was incurred as of date of production, rather than date of the tax assessment).

[9]    MCAD did not pursue its tax lien on the property.